IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

ROBERT M. RILEY, JR.,           )
                                )
            Plaintiff,          )
                                )
v.                              )   Case No. CIV-09-155-KEW
                                )
UNION PACIFIC RAILROAD          )
COMPANY, a corporation,         )
                                )
            Defendant.          )

## OPINION AND ORDER

This matter comes before the Court on Defendant's Daubert Motion Regarding William O. Hopkins, M.D. filed April 19, 2010 (Docket Entry #55). Plaintiff responded to the Motion and Defendant replied. Additionally, this Court conducted a hearing to receive the testimony of Dr. Hopkins on May 7, 2010. Counsel of record for Plaintiff as well as Dr. Hopkins were present. Mr. Rob Hart and Mr. Jeffrey Fields represented Defendant at the hearing.

Defendant seeks to exclude the opinion of Plaintiff's proffered witness, William O. Hopkins, M.D. ("Dr. Hopkins"). Dr. Hopkins is a board certified orthopedic surgeon, currently licensed to practice medicine in Missouri and Kansas. He stopped his active surgical practice. He currently acts as a clinical associate professor at the University of Missouri at Columbia in their orthopedic spine clinic. He now only sees the occasional person as

a courtesy. Approximately 90 percent of Dr. Hopkins' practice consists of performing independent medical examinations for attorneys.

Dr. Hopkins began seeing Plaintiff on September 13, 2007 and states that he has continued to see Plaintiff "many times" since that first visit. Dr. Hopkins was unsure the avenue by which Plaintiff first came to him after the accident forming the subject matter of this action. Dr. Hopkins primarily receives new patients only through his association with the University of Missouri but Plaintiff was not referred to him in this manner.

Upon examining Plaintiff, Dr. Hopkins sent him for further diagnostic procedures and directed his treatment. Dr. Hopkins reviewed Plaintiff's x-rays and other attending physicians' reports. He was not Plaintiff's operating physician since he had discontinued his surgical practice. In his deposition, Plaintiff did not consider Dr. Hopkins as a treating physician, testifying Dr. Hopkins diagnosed more than treated him.

Defendant challenges whether Dr. Hopkins constituted Plaintiff's "treating physician." Neither party provides authority on the definition of the term. Despite the manner in which Plaintiff was first referred to him, Dr. Hopkins rendered

diagnostic and medical assistance services which went beyond that which might be expected from a mere expert witness. As such, this Court considers him to have been one of Plaintiff's treating physicians. He will, therefore, be permitted to render opinions on Plaintiff's prognosis of future recovery and ability to perform physical functions based upon his treatment.

Even if Dr. Hopkins is a treating physician, Defendant contends his opinions are cumulative of those rendered by Plaintiff's other treating physicians. Normally, evidence is cumulative "if its probative effect is already achieved by other evidence in the record; that is, 'if the small increment of probability it adds may not warrant the time spent in introducing it." Jewell v. Life Ins. Co. of North America, 508 F.3d 1303, 1314 (10th Cir. 2007)(citations omitted). In reviewing Dr. Hopkins' testimony, both live at the hearing and in his deposition, this Court finds his testimony contains some non-cumulative evidence regarding his diagnostic orthopedic observations and opinions. Dr. Hopkins will, therefore, be permitted to testify at trial. Defendant's concerns about whether Dr. Hopkins' opinions are supported by those rendered by Plaintiff's other treating physicians are matters which may be ferreted out on cross-

examination.

Dr. Hopkins also renders opinions which delve into the realm normally occupied by an expert witness. Dr. Hopkins' primary opinion challenged by Defendant concerns his views of the effects of vibration upon Plaintiff's medical condition.

Generally, expert testimony is permitted

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

The court acts as a gatekeeper as to any such testimony by making "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 593 (1993). This analysis applies to all expert testimony. Kuhmo Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999).

Dr. Hopkins opined during his deposition that "I don't perceive [Plaintiff] to be a competent railroad engineer because of his multiple physical problems and their impact on him in regards

4

to his - not only his physical abilities, but his potential abilities to concentrate and - and perform a job that requires constant concentration and attention." Dr. Hopkins identified Plaintiff's problems to entail his neck, low back, and left shoulder.

At the hearing, Dr. Hopkins specifically stated that the vibration associated with being a locomotive engineer would exacerbate Plaintiff's back problems and render him physically incapable fo operating a train "in the public domain." Dr. Hopkins possesses no specialized knowledge of the vibration caused by a locomotive. He has not measured the vibration forces associated with the engineer position in the particular working environment Plaintiff would occupy in his employment. Dr. Hopkins identified several studies, from both domestic and international authorities, concerning vibration in general and the effects upon the spine. None of the studies he identified, however, were specific to the vibration forces on a locomotive in general or a locomotive engineer utilizing the equipment available to Plaintiff in the engine, such as the seating used in locomotives - even though such specific studies were available and identified by Defendant's counsel at the hearing. Dr. Hopkins stated he was following the "general majority consensus" that vibration can cause damage to the spine. He did not, however, relate such a consensus to the particular circumstance in the workplace to which Plaintiff would

be subjected.

Dr. Hopkins did not demonstrate knowledge of the methodology for measuring vibration. He did not show a familiarity with the standards by which safe and unsafe vibration are established. He did not conduct or rely upon any peer reviewed studies of the forces involved in the operation of a locomotive train - findings which would be imperative to the conclusion he reached on the effects of vibrations upon Plaintiff's spine and back. Dr. Hopkins did not participate in any whole body vibration studies to ascertain the effects of vibration at the level experienced in locomotive engines. Although Dr. Hopkins testified he treated locomotive engineers in the past, he did not relate that treatment to vibration problems associated with a locomotive engine. Dr. Hopkins' qualification as an orthopedic surgeon and treating physician does not equate with a qualification to render an opinion on the effects of vibration from a locomotive engine, a subject encompassed by other disciplines such as biomechanics and ergonomics. Allowing such testimony at trial would permit Dr. Hopkins to engage in the "subjective belief or unsupported speculation" specifically dissuaded in Daubert. Mitchell v. Gencorp, Inc., 165 F.3d 778, 780 (10th Cir. 1999) citing Daubert, 509 U.S. at 590.

Moreover, Dr. Hopkins' opinions on the general effects of vibration upon the spine does little to assist the jury. The

triers of fact are fully capable of drawing such patently obvious conclusions as offered by Dr. Hopkins in this regard so as to obviate the need for his testimony on vibration. One of the most important components to the gatekeeper function performed by this Court is whether the proposed expert testimony will serve as an assistance to the jury or whether it interferes with the factual finding which any reasonable jury would be capable and competent to assess for itself. <u>Thompson v. State Farm Fire and Casualty Co.</u>, 34 F.3d 932, 941 (10th Cir. 1994). As a result, Dr. Hopkins will not be permitted to testify as to the predicted effects of vibration upon Plaintiff's medical conditions in any future employment with Defendant.

IT IS THEREFORE ORDERED that Defendant's Daubert Motion Regarding William O. Hopkins, M.D. filed April 19, 2010 (Docket Entry #55) is hereby **GRANTED**, in part, in that Dr. Hopkins will not be permitted to testify concerning the effects of vibration upon Plaintiff. However, the Motion is **DENIED**, in that Dr. Hopkins may testify concerning his diagnosis, treatment, and prognosis for Plaintiff.

IT IS SO ORDERED this 11th day of May, 2010.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE